STATE of Wisconsin, Plaintiff-Respondent,

v.

Adam S. GONZALES, Defendant-Appellant.

Supreme Court

*No. 01–0224–CR. Oral argument April 16, 2002.—Decided June 13, 2002.*

2002 WI 59

(Also reported in 645 N.W.2d 264.)

For the defendant-appellant there were briefs and oral argument by *Suzanne L. Hagopian,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

■

An amicus curiae brief was filed by *Michael Patrick Murray,* South Riding, Virginia, and *Robert Dowlut,* Fairfax, Virginia, on behalf of the National Rifle Association of America.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This case comes before this court on certification by the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000).[1] The Circuit Court for Kenosha County, Michael S. Fisher, Judge, entered a judgment of conviction and an order denying the post-conviction motion of Adam S. Gonzales, the defendant. The defendant sought to vacate his conviction for going armed with a concealed and dangerous weapon in violation of Wis. Stat. § 941.23. The defendant's sole ground for challenging his conviction was that § 941.23 is unconstitutional. He asserts that § 941.23 is incompatible with Article I, Section 25 of the Wisconsin Constitution, which creates a right to keep and bear arms. The circuit court rejected the defendant's argument.

■

¶ 2. We do not address whether Wis. Stat. § 941.23 is rendered unconstitutional by Article I, Section 25. We conclude that Article I, Section 25 was not in effect on the day on which the defendant violated § 941.23. Accordingly, we further conclude that the defendant's sole defense to his conviction, namely, the unconstitutionality of § 941.23, fails. We therefore affirm the judgment of conviction and the order of the circuit court.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version, unless otherwise indicated.

¶ 3. Following a jury trial, the defendant was convicted of disorderly conduct in violation of Wis. Stat. § 947.01 and carrying a concealed weapon in violation of § 941.23. Section 941.23 provides: "Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor." The circuit court then sentenced the defendant as a repeater to thirty months for the disorderly conduct charge and twenty-four months for the concealed weapon charge, the sentences to be served consecutively.

¶ 4. For the purposes of this appeal, the facts are not in dispute. On November 6, 1998, the defendant, Adam Gonzales, created a disturbance at the apartment building in which he lived, and he was arrested. The arresting officer patted down the defendant and found a gun magazine in the defendant's pants pocket and found a gun in the pocket of a black leather jacket that the defendant had been wearing during the disturbance.

¶ 5. The defendant filed a post-conviction motion, seeking to vacate his conviction for carrying a concealed weapon. He argued that Wis. Stat. § 941.23, Wisconsin's concealed weapon law, was unconstitutional on its face and unconstitutional as applied to him as a result of the adoption of Article I, Section 25 of the Wisconsin Constitution. Article I, Section 25 provides in its entirety as follows: "The people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose."

¶ 6. The circuit court denied the post-conviction motion. The defendant appealed the order, and the court of appeals certified to this court the question of

whether the prohibition against going armed with a concealed and dangerous weapon as set forth in § 941.23 is unconstitutional in light of Article I, Section 25. This court granted the certification.

## II

¶ 7. During oral argument in the present case, the question arose whether Article I, Section 25 was in effect on November 6, 1998, when the defendant committed the offense of going armed with a concealed and dangerous weapon in violation of Wis. Stat. § 941.23. The constitutional amendment was on the ballot in the general election on November 3, 1998, and was ratified that day by 74 percent of the vote cast.

¶ 8. On November 30, 1998, pursuant to Wis. Stat. § 7.70(3)(h), the chairperson of the State Elections Board determined and certified that the proposed constitutional amendment was approved by a majority of the electors voting thereon.

¶ 9. The court ordered supplemental briefs to address two issues: (1) when did the 1998 constitutional amendment adopting Article I, Section 25 become effective, and (2) in making that decision, what is the importance of Wis. Stat. § 7.70(3)(h), which describes the effective date of a constitutional amendment?

¶ 10. The present case poses questions involving interpretation of the state constitution and a state statute. These are questions of law that this court determines independent of the circuit court but benefiting from its analysis.

## III

¶ 11. We first examine Article I, Section 25. This constitutional amendment states in its entirety:

> The people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose.

The legislative records regarding Article I, Section 25 are silent about its effective date.

¶ 12.   Article XII, Section 1 of the Wisconsin Constitution, governing the adoption of constitutional amendments, is silent about the effective date of a constitutional amendment. Article XII, Section 1 merely states in pertinent part that if the people ratify an amendment, it shall become part of the constitution:

> [I]f the people shall approve and ratify such amendment . . . by a majority of the electors voting thereon, such amendment . . . shall become part of the constitution.

¶ 13.   Wisconsin Stat. § 7.70(3)(h) sets forth the effective date of a constitutional amendment as the "time the chairperson of the [State Elections Board] or the chairperson's designee certifies that the amendment . . . is approved."[2] Section 7.70(3)(a) provides that the chairperson of the State Elections Board shall publicly canvass the returns and make his or her certifications and determinations on or before the first day of December following a general election.[3]

¶ 14.   Although statewide canvassing relating to constitutional amendments has existed since state-

---

[2] Section 7.70(3)(h) provides in relevant part:

Whenever a constitutional amendment or other statewide validating or ratifying referendum question which is approved by the people does not expressly state the date of effectiveness, it shall become effective at the time the chairperson of the board or the chairperson's designee certifies that the amendment or referendum question is approved.

[3] Section 7.70(3)(a) provides:

hood,[4] the language in Wis. Stat. § 7.70(3)(h) governing the effective date of a constitutional amendment was not adopted until 1955.[5] The drafting file of § 7.70(3)(h) does not explain the reason for the adoption of this provision.[6]

¶ 15. The State argues that pursuant to Wis. Stat. § 7.70(3)(h), Article I, Section 25 became effective when the chairperson canvassed and certified the election on November 30, 1998. The State reasons that § 7.70(3)(h) is a valid statute that provides an effective date for constitutional amendments that do not expressly state the date of effectiveness.

¶ 16. In contrast, the defendant argues that the Wisconsin Constitution does not grant the legislature authority to enact Wis. Stat. § 7.70(3)(h) and to delay the effectiveness of a constitutional amendment when a proposed amendment is silent about its effective date. The defendant interprets Article XII, Section 1 of the Wisconsin Constitution to mean that a constitutional amendment becomes effective when a majority of the

---

The chairperson of the board or a designee of the chairperson appointed by the chairperson to canvass a specific election shall publicly canvass the returns and make his or her certifications and determinations on or before the 2nd Tuesday following a spring primary, the 15th day of May following a spring election, the 4th Tuesday in September following a September primary, the first day of December following a general election, the 2nd Thursday following a special primary, or within 18 days after any special election.

[4] *See* Wis. Rev. Stat. Ch. 6, §§ 82, 83 (1849).

[5] Ch. 384, Laws of 1955. When enacted in 1955, the language appeared in Wis. Stat. § 6.10(1) (1955–57). When the election laws were rewritten in 1965, the language was moved to § 7.70(3)(g), Wis. Stat. (1965–66).

[6] Legislative Reference Bureau Drafting File to ch. 384, Laws of 1955, LRB-2178.

electors adopts the amendment. According to the defendant, the vote of the electors is the last necessary act to make a constitutional amendment effective.

¶ 17. Records of the Wisconsin constitutional conventions in 1846 and 1847–48 reflect little debate about the procedure for amending the constitution and are not helpful in determining the effective date of a constitutional amendment.

¶ 18. The parties rely on Wisconsin cases to support their respective positions, but no case directly decides the issue presented here. In *The Attorney General ex rel. Bashford v. Barstow*, 4 Wis. 567 (1855), two gubernatorial candidates asserted a right to the office of governor. One candidate asserted his right based on having received the "highest number of votes" in the general election as provided in Article V, Section 3 of the Wisconsin Constitution.[7] The other candidate asserted his right based on having been issued a certificate as the winner by the board of canvassers. This court held that the right to office is based on the highest number of votes cast by the electors, not the certification by the board of canvassers. The court reasoned that the board of canvassers possessed a strictly ministerial[8] duty created by the legislature, which may not supersede the state constitution's dictate that an election is determined by the candidate receiving the most votes.[9]

¶ 19. Although *Barstow* established that the vote of the electors determines the right to an office, *Barstow* does not answer the question of when that right

---

[7] "The persons respectively having the highest number of votes . . . shall be elected . . . ." Wis. Const. art. V, § 3.

[8] *The Attorney General ex rel. Bashford v. Barstow*, 4 Wis. 567, 775 (1855).

[9] *Id.* at 825.

becomes effective and thus does not answer the question before the court in the present case.

¶ 20. In *State ex rel. Hudd v. Timme*, 54 Wis. 318, 326–32, 11 N.W. 785 (1882), this court held that a state constitutional amendment creating a biennial legislature was not effective immediately upon adoption because, as a practical matter, the amendment could not be effective until new legislative elections occurred. The *Hudd* court did not address the question posed in the present case regarding when a constitutional amendment that requires no subsequent implementing action takes effect.

¶ 21. The issue of the effective date of a constitutional amendment arose in 1955. The joint resolution proposing a constitutional amendment stated that the amendment was to become effective on May 1, 1955. The text of the proposed amendment that appeared before the electors at the election failed, however, to include the delayed effective date of May 1, 1955.

¶ 22. The electors ratified the proposed amendment on April 5, 1955. The board of canvassers certified the results of the election on April 18, 1955. Both an Opinion of the Attorney General[10] and a decision of this

---

[10] The Opinion of the Attorney General states:

It could be argued with some force here, that the amendment here involved took effect on April 18, 1955, when pursuant to the provisions of sec. 6.71(7), Stats., the state board of canvassers certified the vote and made the determination that such amendment was adopted by a majority of the electors voting thereon. . . . On the other hand, there are indications in some of the cases that language respecting amendments like that in our art. XII, sec. 1, means just what it says, namely, that an amendment comes into existence immediately upon the casting of the majority vote, and therefore there is no power in the legislature or anyone else to provide for effectiveness at any other time. However it is not necessary at this time to resolve that question, as the question

court, *State ex rel. Thomson v. Peoples State Bank,* 272 Wis. 614, 76 N.W.2d 370 (1956), found it unnecessary, however, to resolve the issue of whether the 1955 amendment went into effect on April 5 or April 18.[11]

¶ 23.  The last Wisconsin case that the parties discuss is *Kayden Industries, Inc. v. Murphy,* 34 Wis. 2d 718, 150 N.W.2d 447 (1967). The *Kayden* case addressed the question of whether the state constitutional amendment itself legalized lotteries or whether the constitutional amendment merely permitted the legislature to enact legislation modifying Wisconsin case law that prohibited lotteries based on the language of the pre-amended constitution.

¶ 24.  *Kayden* held that a substantive state constitutional amendment is self-executing and that subsequent legislative action is unnecessary to give effect to the amendment, unless the language of the amendment is ambiguous or legislative action is required. *Kayden* does not answer the question of when a constitutional amendment takes effect.

¶ 25.  The issue posed in the present case is one of first impression in Wisconsin. The states that have considered the issue are divided. Several states with

---

here is not whether this amendment went into effect upon the majority vote on April 5, 1955, or not until the certification thereof on April 18, 1955.

44 Op. Att'y Gen. 108, 111–12 (1955).

[11] "The amendment went into effect and became a part of the constitution either on April 5, 1955, following the election, or on April 18, 1955, following the certification of the vote by the board of canvassers. It is unnecessary to determine which was the effective date of the amendment." *State ex rel. Thomson v. Peoples State Bank,* 272 Wis. 614, 625–26, 76 N.W.2d 370 (1956).

constitutions providing that constitutional amendments shall become part of the constitution if adopted by a majority of electors have determined that a proposed constitutional amendment becomes effective on the date the amendment is ratified by the electors.[12] Several other states have held that a proposed constitutional amendment does not take effect until the result of the election is determined by a canvass of the votes.[13] We are persuaded that unless a constitutional

[12] *See, e.g., Matheny v. Independence County,* 227 S.W. 22 (Ark. 1925) (holding that state constitutional amendment granting rights sixty days from "approval and adoption" referred to sixty days from the election, not sixty days from governor's proclamation as provided for by statute); *In re Advisory Opinion to the Governor,* 16 So. 410 (Fla. 1895) (stating that language of state constitution mandates that state constitutional amendments become effective upon approval of a majority of voters); *Whitcomb v. Young,* 279 N.E.2d 566 (Ind. 1972) (holding state constitutional amendment modifying term of office for state officials also elected in same election to be effective on date and time of closing of polls); *Seneca Mining Co. v. Secretary of State,* 47 N.W. 25 (Mich. 1890) (holding that state constitutional amendments take effect at time of their ratification by popular vote); *State ex rel. O'Connell v. Duncan,* 88 P.2d 73 (Mont. 1939) (holding that state constitution mandates that state constitutional amendments become effective upon approval of a majority of voters regardless of statutory provision stating "the amendment shall be in full force and effect as part of the constitution from and after the date of [governor's public] proclamation"); *City of Euclid v. Heaton,* 238 N.E.2d 790 (Ohio 1968) (holding that constitutional amendment effective on date of ratification by voters when no effective date listed in text of amendment on ballot despite delayed date for effectiveness appearing in text of legislature's joint resolution).

[13] *See, e.g., Opinion of the Justices,* 36 So.2d 499 (Ala. 1948) (stating proposed state constitutional amendment ratified by a

amendment provides otherwise, it takes effect upon the certification of a statewide canvass of the votes as provided in Wis. Stat. § 7.70(3)(h).

¶ 26. First, we conclude that the language of Article XII, Section 1 allows the legislature to adopt Wis. Stat. § 7.70(3)(h). Although Article XII, Section 1 can be read to mean that a constitutional amendment is effective on the date it is ratified by a vote of the people, this interpretation is not the only reasonable interpretation. The legislature has provided for the canvass of votes and the announcement of election results, including those on constitutional amendments, since the adoption of the Wisconsin constitution. The certification process following the ratification of a constitutional amendment by the people may therefore be considered as part of the vote of the people and as an

---

majority of voters becomes effective upon the completion of mandatory statewide canvassing to determine voting results); *Opinion of the Justices,* 287 N.E.2d 910 (Mass. 1972) (stating ratified constitutional amendment becomes effective following completion of a final tabulation of the vote despite state constitutional language indicating a proposed constitutional amendment "shall become part of the constitution if approved . . . by a majority of the voters"); *City of Duluth v. Duluth St. Ry. Co.,* 62 N.W. 267 (Minn. 1895) (holding ratified constitutional amendment did not become effective at least until the result was ascertained by the canvass of the vote); *State v. Kyle,* 65 S.W. 763 (Mo. 1901) (holding constitutional amendment takes effect upon the canvass of the vote and not before); *Real v. People,* 42 N.Y. 270, (N.Y. 1870) (holding ratified constitutional amendment not effective until the result of election is declared by canvassers); *Torres v. State,* 278 S.W.2d 853 (Tex. Crim. App. 1955) (holding that ratified constitutional amendment becomes effective upon date official canvass of voting returns shows amendment was adopted).

essential component of the voting process.[14] Therefore, Article XII, Section 1 can reasonably be interpreted to mean that an amendment becomes effective when the last step of the voting process occurs, namely, the canvass.

¶ 27.   Second, the state constitution gives the legislature broad powers for submitting the constitutional amendment to the people. Article XII, Section 1 provides: "It shall be the duty of the legislature to submit such proposed amendment or amendments to the people in such manner and at such time as the legislature shall prescribe." The manner of submitting the proposed amendment can be viewed as including the statutory mode and manner of tabulating the returns of the votes of the election. Other state courts have read language in their state constitutions that is similar to the language in the Wisconsin constitution in this way.[15]

¶ 28.   Third, as a practical matter a canvass of the vote upon an amendment is necessary to ascertain the result of the election.[16] Arguments favoring the effec-

---

[14] The court in *Real v. People* stated:

> The canvass of the votes cast by various boards of canvassers as required by law, and announcing the result and certifying the same as required by law, is as much a part of the election as the casting of the votes by the electors. The election is not deemed complete until the result is declared by the canvassers as required by law.

*Real v. People*, 42 N.Y. 270, 276 (N.Y. 1870). *See also Opinion of the Justices*, 287 N.E.2d 910, 912 (Mass. 1972); Walter F. Dodd, *The Revision and Amendment of State Constitutions*, Vol. 1, 203 (1910).

[15] *See, e.g., Kyle*, 65 S.W. at 766; *Duluth St. Ry. Co.*, 62 N.W. at 268.

[16] *See, e.g., Kyle*, 65 S.W. 763; Dodd, *The Revision and Amendment of State Constitutions*, Vol. 1, at 203–04.

tiveness of state constitutional amendments at the time of voter ratification originated as an analogy to the effective dates of newly enacted statutes. Under the common law, statutes are effective immediately upon passage.[17] By analogy, the argument was made that constitutional amendments should also be effective immediately upon ratification.

¶ 29. This analogy is faulty. Upon passage of a statute into law, generally there is no question about the vote that propelled the drafted statute into law. However, in the case of popular votes, a certification process is necessary to assure the results of the vote. As Professor Dodd in his treatise, *The Revision and Amendment of State Constitutions,* explains: "Unless a constitution specifically provides otherwise, the better rule would seem to be that an amendment does not become effective in any case until the vote has been canvassed and the result announced."[18]

¶ 30. For these reasons we conclude that the legislature has the authority under Article XII, Section 1 of the Wisconsin Constitution to adopt reasonable election laws such as Wis. Stat. § 7.70(3)(h) to provide that state constitutional amendments are effective after canvass and certification. We further conclude that pursuant to § 7.70(3)(h), Article I, Section 25 was not in effect on November 6, 1998, when the offense was committed. Accordingly, the defendant's challenge to the constitutionality of § 941.23 fails, and his conviction is affirmed.

---

[17] Dodd, *The Revision and Amendment of State Constitutions,* Vol. 1, at 204.

[18] *Id.*

*By the Court.*—The judgment and order are affirmed.