**2020 WI App 73**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:         2019AP664-CR

† Petition for Review filed

Complete Title of Case:


STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

T. A. J.,

APPELLANT,

V.

ALAN S. JOHNSON,

DEFENDANT-RESPONDENT.†


| | |
|---|---|
| Opinion Filed: | October 29, 2020 |
| Submitted on Briefs: | December 6, 2019 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the appellant, the cause was submitted on the briefs of *Andrea K. Rufo* of *Legal Action of Wisconsin, Inc.*, Racine. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Sarah L. Burgundy*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Nathan J. Wojan* of *Petit & Dommershausen, S.C.*, Menasha.

A nonparty brief was filed by *Ellen Henak* and *Robert R. Henak* of *Henak Law Office, S.C.*, Milwaukee, for Counsel for Wisconsin Association of Criminal Defense Lawyers.

COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   2019AP664-CR
STATE OF WISCONSIN

Cir. Ct. No. 2017CF56

IN COURT OF APPEALS

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

T. A. J.,

APPELLANT,

V.

ALAN S. JOHNSON,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Waupaca County: RAYMOND S. HUBER, Judge. *Reversed and cause remanded with directions.*

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

¶1 FITZPATRICK, P.J. Alan Johnson is charged with multiple crimes stemming from Johnson's alleged sexual assault of T.[1] T. appeals an order of the Waupaca County Circuit Court which determined that T. does not have standing in this criminal case to oppose a motion brought by Johnson, as yet undecided by the circuit court, requesting an *in camera* review by the circuit court of T.'s health care records for potential release to the parties for use at trial.[2] In deciding that T. does not have standing to address this issue with the court, the circuit court relied on this court's holding in *Jessica J.L. v. State*, 223 Wis. 2d 622, 589 N.W.2d 660 (Ct. App. 1998). We reverse the order of the circuit court because we conclude that: (1) a recent amendment to the Wisconsin Constitution regarding the rights of crime victims grants a crime victim such as T. standing to oppose, and to be heard regarding his or her opposition to, a defendant's motion for an *in camera* review of the victim's health care records and, therefore, abrogates the pertinent holding in *Jessica J.L.*; (2) this grant in the recent constitutional amendment applies retrospectively to T.'s request for standing to oppose, and to be heard regarding his opposition to, Johnson's pending motion for an *in camera* review of T.'s health care records.

## BACKGROUND

¶2 The material facts are not in dispute. Johnson is charged with multiple criminal offenses stemming from alleged sexual assaults of T. Johnson filed in the

---

[1] We refer to the alleged victim by the initial T. *See* WIS. STAT. RULE 809.86(4) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] By a previous order, this court granted T.'s petition for leave to appeal the circuit court's nonfinal order. *See* WIS. STAT. RULE 809.50(3).

circuit court a motion for the court to conduct an *in camera* inspection of T.'s health care records in order to determine whether those should be shared with the parties.[3] Johnson's motion is commonly referred to as a ***Shiffra-Green*** motion.

¶3    We pause to summarize pertinent discussion in ***Shiffra*** and ***Green***. ***State v. Shiffra***, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and ***State v. Green***, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, established a judicial process by which a criminal defendant may trigger an *in camera* review by the circuit court of an alleged victim's health care records in order for the court to determine whether any records should be released to the parties for potential use at trial.  *See **Shiffra***, 175 Wis. 2d at 608; ***Green***, 253 Wis. 2d 356, ¶32.  In ***Shiffra***, this court stated that a defendant may trigger an *in camera* inspection of an alleged victim's health care records by making a preliminary showing that the records are material to the defense.  ***Shiffra***, 175 Wis. 2d at 608.  In ***Green***, our supreme court clarified that the preliminary showing of materiality requires that the defendant "show a 'reasonable likelihood' that the records will be necessary to a determination of guilt or innocence."  ***Green***, 253 Wis. 2d 356, ¶32 (quoted source omitted).  The supreme court further stated in ***Green*** that the preliminary showing must be "fact-specific … describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense."  *Id.*, ¶33.  If a defendant makes a sufficient showing, the circuit court must review the

---

[3] Johnson also filed a motion seeking an *in camera* review of the health care records of a second alleged sexual assault victim named in the information.  The circuit court determined that the second alleged victim also lacks standing to oppose Johnson's motion and denied the request on that basis.  Whether the circuit court properly denied the request of that alleged victim is not an issue on appeal.

Separately, given our exclusive focus on the standing and retrospectivity issues, we do not address the nature of the medical records at issue or arguments from anyone as to why those would or would not be material at trial.

health care records *in camera* to determine whether the records "have any independent probative value." *Shiffra*, 175 Wis. 2d at 611. However, an alleged victim may refuse to release his or her health care records for the *in camera* review. *See, e.g.*, *id.* at 612; *see also* WIS. STAT. § 146.82(1). If the victim refuses, his or her testimony is suppressed in order to protect the defendant's right to a fair trial. *See Shiffra*, 175 Wis. 2d at 612.

¶4 The issue in this appeal is not whether T. may refuse to disclose his health care records for an *in camera* review. Rather, T. asserts that he has standing in this criminal case in the circuit court to oppose the motion, and to argue that Johnson has failed in his motion to make a sufficient showing to obtain the *in camera* review.

¶5 The State did not take a position in the circuit court opposing Johnson's ***Shiffra-Green*** motion. T. retained counsel and filed a pleading in the circuit court arguing that Johnson's ***Shiffra-Green*** motion should be denied because, according to T., Johnson's motion fails to meet the requirements to obtain an *in camera* review of his health care records. As part of this pleading, T. took the position that he has standing to oppose Johnson's ***Shiffra-Green*** motion, and such standing allows T. to make arguments in court and in writing opposing that motion. Johnson challenged T.'s standing to oppose Johnson's ***Shiffra-Green*** motion. The State took no position in the circuit court on whether T. has standing in these circumstances.

¶6 The circuit court determined that T. does not have standing to oppose, or to make arguments to the court regarding his opposition to, Johnson's ***Shiffra-Green*** motion. The circuit court relied on this court's holding in ***Jessica J.L.*** that an alleged victim does not have standing to object to, or make arguments to the court

regarding, a defendant's ***Shiffra-Green*** motion. *See **Jessica J.L.***, 223 Wis. 2d at 625-26. The circuit court also concluded that our holding regarding standing in ***Jessica J.L.*** has not been abrogated by any Wisconsin Statute enacted subsequent to issuance of our opinion in ***Jessica J.L.*** As noted, T. petitioned this court for leave to appeal the circuit court's nonfinal order, and we granted the petition.[4]

¶7 After briefing was completed by the parties to this appeal,[5] a majority of Wisconsin voters in the April 2020 election voted in favor of a constitutional amendment sometimes known as "Marsy's Law" (which we will refer to as the "2020 constitutional amendment").[6] The 2020 constitutional amendment alters article I, section 9m(2)(n) of the Wisconsin Constitution by setting forth rights of crime victims, authorizing victims to assert those rights in court in some circumstances, and affording remedies for violations of those rights. *See* https://docs.legis.wisconsin.gov/misc/lrb/reading_the_constitution/crime _victims_rights_amendment_5_1.pdf (last visited October 23, 2020).

¶8 We invited supplemental briefing from the parties to this appeal on several issues related to the passage of the 2020 constitutional amendment.[7]

---

[4] We also ordered that the State be named as an additional respondent in this appeal with the opportunity to file a respondent's brief.

[5] For convenience we use the phrase "parties to this appeal" to refer collectively to Johnson, the State, and T., which is not to say that T. is or will be a party in the underlying criminal case.

[6] The amendment was approved twice by the legislature prior to April 2020. *See* https://docs.legis.wisconsin.gov/2019/proposals/sjr2 (last visited October 23, 2020).

[7] We invited proposed amici, the Wisconsin District Attorneys Association and the Wisconsin Association of Criminal Defense Lawyers, to file briefs regarding those same issues. The Wisconsin District Attorneys Association declined to do so. Attorney Ellen Henak, on behalf of the Wisconsin Association of Criminal Defense Lawyers, filed an amicus brief, and we thank Attorney Henak for her efforts and input.

**DISCUSSION**

¶9　T. and the State argue that the circuit court erred in concluding that T. does not have standing to oppose, and to make arguments to the circuit court regarding his opposition to, Johnson's *Shiffra-Green* motion based on the holding of *Jessica J.L.* According to T. and the State, that holding has been abrogated by subsequent authorities.

¶10　T. argues that the 2020 constitutional amendment does not apply to his standing or his substantive position opposing Johnson's pending *Shiffra-Green* motion, and that Wisconsin law "requires this Court to decide this case" based on the non-2020 amendment-related arguments that the parties to this appeal made to this court in their "original briefs." Specifically, T. contends that the holding concerning standing in *Jessica J.L.* has been abrogated by case law and statutes enacted subsequent to the *Jessica J.L.* opinion but prior to passage of the 2020 constitutional amendment.

¶11　The State argues that the 2020 constitutional amendment grants crime victims standing to oppose, and to make arguments to the court regarding their opposition to, a defendant's *Shiffra-Green* motion, and also that the amendment applies to current and future crime victims, including in cases such as this one, "in which the litigation commenced before the effective date [of the constitutional amendment]."[8]

---

[8] Because T. sometimes, in the alternative, joins the State in arguing that the 2020 constitutional amendment applies to grant him standing to oppose Johnson's *Shiffra-Green* motion, for simplicity we will refer to those arguments as the State's arguments.

¶12    Johnson relies on the pertinent holding in *Jessica J.L.* He contends that no other authorities, including the 2020 constitutional amendment, abrogate the holding of *Jessica J.L.*

¶13    For the following reasons, we conclude that the 2020 constitutional amendment grants crime victims such as T. standing to oppose, and to make arguments supporting their opposition to, a defendant's *Shiffra-Green* motion and, therefore, abrogates the holding regarding standing in *Jessica J.L.* We also conclude that this grant in the 2020 constitutional amendment applies retrospectively to T.'s request for standing to oppose, and to make arguments to the court regarding his opposition to, Johnson's *Shiffra-Green* motion.[9]

## I. *Jessica J.L.* and the 2020 Constitutional Amendment.

¶14    We begin our analysis by discussing, for context, two preliminary matters. The first is the holding of *Jessica J.L.* regarding standing of alleged crime victims to oppose a *Shiffra-Green* motion. The second concerns the effective date, and terms, of the 2020 constitutional amendment.

### A. *Jessica J.L.*

¶15    To repeat, in *Jessica J.L.*, we concluded that an alleged victim does not have standing to object to a defendant's *Shiffra-Green* motion requesting an *in camera* review by the circuit court of the alleged victim's health care records for

---

[9] Based on those dispositive conclusions, we do not consider other arguments raised by the parties to this appeal, including their arguments regarding legal authorities subsequent to the *Jessica J.L.* opinion but prior to passage of the 2020 constitutional amendment. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that, if a decision on one point disposes of the appeal, the court will not decide other issues raised).

potential release to the parties for use at trial.  *See Jessica J.L.*, 223 Wis. 2d at 626, 630.

¶16     The defendant in *Jessica J.L.* requested an *in camera* review of the health care records of the alleged victim, Jessica.  *Id.* at 626.  The State did not oppose the *in camera* review and waived its right to request a hearing at which the defendant would have been required to establish that the records sought to be reviewed and potentially used at trial were material to his defense.[10]  *Id.* at 627.  Jessica's guardian ad litem filed a pleading in the circuit court asking the court "to 'reopen' the proceedings in regard to the materiality of the records [the defendant] had sought."  *Id.*  The circuit court denied the guardian ad litem's motion on the ground that Jessica and her guardian ad litem lacked standing in the criminal case to oppose the defendant's request for an *in camera* review of Jessica's health care records.  *Id.*

¶17     On appeal, this court affirmed, concluding that only those attorneys authorized by law to prosecute the charged crime on behalf of the State, the district attorney or an appointed special prosecutor, and of course counsel for each defendant, may take positions before the circuit court in a criminal prosecution on the issue of a defense request for review of victim medical records.  *Id.* at 630 (citing WIS. STAT. §§ 978.045 and 978.05(1)).  On this basis we concluded that Jessica and

---

[10] *Jessica J.L. v. State*, 223 Wis. 2d 622, 589 N.W.2d 660 (Ct. App. 1998), was decided after *Shiffra* but before *Green*.  Accordingly, at the time *Jessica J.L.* was decided, a defendant was required to show only that the records sought were material to his or her defense.  *See id.* at 626-27; *State v. Shiffra*, 175 Wis. 2d 600, 605, 499 N.W.2d 719 (Ct. App. 1993).  The parties to this appeal do not contend that the later holding of *State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, which modified the holding in *Shiffra*, makes any material difference to whether the pertinent statement in *Jessica J.L.* governs the result in this appeal.

8

her guardian ad litem did not have standing to oppose the defendant's motion in the criminal prosecution. *Id.* at 626, 630.

## B. 2020 Constitutional Amendment.

¶18 The 2020 constitutional amendment became effective on May 4, 2020, the date the amendment was certified. *See* WIS. STAT. § 7.70(3)(h) (providing that, when a constitutional amendment approved by the voters does not expressly indicate the effective date, the amendment becomes effective when an authorized person certifies that the amendment is approved); *see also* ***State v. Gonzales***, 2002 WI 59, ¶¶13, 30, 253 Wis. 2d 134, 645 N.W.2d 264 (stating a constitutional amendment becomes effective after certification).

¶19 The 2020 constitutional amendment states in pertinent part:

> **Victims of crime**. SECTION 9m.
>
> **(1)**
>
> (a) In this section, … "victim" means any of the following:
>
> 1. A person against whom an act is committed that would constitute a crime if committed by a competent adult.[11]
>
> ….
>
> **(2)** In order to preserve and protect victims' rights to justice and due process throughout the criminal and juvenile justice process, victims shall be entitled to all of the

---

[11] The parties to this appeal do not dispute that, although Johnson has not been convicted of any crime against T., T. is a "victim" as defined in the 2020 constitutional amendment. Accordingly, for the remainder of this opinion, we refer to T. variously as a "victim," "crime victim," or "alleged victim."

In addition, we do not in this appeal decide the rights, if any, of other persons who come within the amendment's definition of "victim" not quoted in the text, such as family members, to be heard in regard to a defendant's ***Shiffra-Green*** motion.

following rights, which shall vest at the time of victimization and be protected by law in a manner no less vigorous than the protections afforded to the accused:

....

(i) Upon request, to be heard in any proceeding during which a right of the victim is implicated, including release, plea, sentencing, disposition, parole, revocation, expungement, or pardon.

....

(L) To refuse an interview, deposition, or other discovery request made by the accused or any person acting on behalf of the accused.

....

(3) Except as provided under sub. (2)(n),[12] all provisions of this section are self-executing....

(4)

(a) In addition to any other available enforcement of rights or remedy for a violation of this section or of other rights, privileges, or protections[13] provided by law, the victim, the victim's attorney or other lawful representative, or the attorney for the government upon request of the victim may assert and seek in any circuit court or before any other authority of competent jurisdiction, enforcement of the rights in this section and any other right, privilege, or protection afforded to the victim by law. The court or other authority with jurisdiction over the case shall act promptly on such a request and afford a remedy for the violation of any right of the victim. The court or other authority with jurisdiction over the case shall clearly state on the record the reasons for any decision regarding the disposition of a victim's right and shall provide those reasons to the victim or the victim's attorney or other lawful representative.

---

[12] The parties to this appeal do not contend that article I, section 9m(2)(n) of the Wisconsin Constitution is germane to our analysis.

[13] The terms "privileges" and "protections" are synonymous with "rights." *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶66 n.3, 376 Wis. 2d 147, 897 N.W.2d 384 (Abrahamson, J., dissenting) (interpreting the terms "privileges" and "protections" found in a previous version of WIS. CONST. art. I, § 9m.).

(b) Victims may obtain review of all adverse decisions concerning their rights as victims by courts or other authorities with jurisdiction under par. (a) by filing petitions for supervisory writ in the court of appeals and supreme court.

….

**(6)** This section is not intended and may not be interpreted to supersede a defendant's federal constitutional rights or to afford party status in a proceeding to any victim.

WIS. CONST. art. I, § 9m.

## II.  Standard of Review and Interpretation of the Wisconsin Constitution and Statutes.

¶20    The issues posed in this case require us to interpret the Wisconsin Constitution and statutes.  We now summarize our standard of review and applicable authorities concerning the interpretation of the Wisconsin Constitution and statutes.

¶21    Whether the victim of a crime has standing to file pleadings in, and make arguments to, the circuit court opposing a *Shiffra-Green* motion brought by the victim's alleged perpetrator is an issue of law that we review de novo. *Jessica J.L.*, 223 Wis. 2d at 628; *see also* *State v. Popenhagen*, 2008 WI 55, ¶23, 309 Wis. 2d 601, 749 N.W.2d 611 ("A determination of standing presents a question of law.").

¶22    Interpretation of our state constitution presents an issue of law that this court decides de novo.  *Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶16, 295 Wis. 2d 1, 719 N.W.2d 408.  We construe constitutional amendments "'so as to promote the object[ives] for which they were framed and adopted.'"  *State v. Cole*, 2003 WI 112, ¶10, 264 Wis. 2d 520, 665 N.W.2d 328 (quoting *Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996)); *Dairyland*, 295 Wis. 2d

1, ¶19. The meaning is determined "by ascertaining the general purpose of the whole … and the remedy sought to be applied." *Kayden Indus., Inc. v. Murphy*, 34 Wis. 2d 718, 729-730, 150 N.W.2d 447 (1966). When interpreting a constitutional provision, courts examine three primary sources: the plain language of the provision, the constitutional debates and practices of the time, and the earliest interpretations of the provision by the legislature as manifested through the first legislative action following adoption. *Dairyland*, 295 Wis. 2d 1, ¶19; *Schilling v. State Crime Victims Rts. Bd.*, 2005 WI 17, ¶16, 278 Wis. 2d 216, 692 N.W.2d 623.[14]

¶23 The interpretation of a statute presents an issue of law that we determine de novo. *Pasko v. City of Milwaukee*, 2002 WI 33, ¶23, 252 Wis. 2d 1, 643 N.W.2d 72. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language." *Id.*

### III.  Application of the 2020 Constitutional Amendment to Johnson's *Shiffra-Green* Motion.

¶24 We conclude that the pertinent provisions of the 2020 constitutional amendment grant a crime victim, such as T., standing to oppose and to make arguments supporting his or her opposition to a defendant's *Shiffra/Green* motion for an *in camera* review, and the amendment to this extent abrogates *Jessica J.L.* We also conclude that the pertinent provisions of the 2020 constitutional

---

[14] The parties to this appeal have provided no material information, and our own search has revealed none, regarding the constitutional debates in the legislature concerning the 2020 constitutional amendment.  In addition, there have been no interpretations of the provision by the legislature through legislative action following adoption of the 2020 constitutional amendment.

amendment apply retrospectively to T.'s assertion of standing to oppose Johnson's pending *Shiffra-Green* motion that was filed before the effective date of the amendment. We explain each conclusion in turn.

### A. The 2020 Constitutional Amendment Grants Crime Victims Standing to Oppose a Defendant's *Shiffra/Green* Motion, and Abrogates *Jessica J.L.*

¶25 The 2020 constitutional amendment grants crime victims rights using broad language. Pertinent here, the amendment subsections (2) and (2)(i) state that a victim has the right to be heard in any proceeding "during which a right of the victim is implicated," and that these and other rights of the victim must be "protected by law in a manner no less vigorous than the protections afforded to the accused." *See* WIS. CONST. art. I, § 9m(2) and (2)(i). Paragraph (4)(a) states that a victim may "assert and seek" in circuit court rights delineated in the amendment and "any other right[s], privilege[s], or protection[s] afforded to the victim by law." *See id.* art. I, § 9m(4)(a). It is undisputed that T. has rights to confidentiality and privilege regarding his health care records. *See* WIS. STAT. §§ 146.82(1) and 905.04(2).

¶26 From those provisions of Wisconsin law, it is manifest that:

- T. has the right to be heard in a circuit court proceeding that implicates his rights or privileges;

- T.'s right to be heard when his rights are implicated must be protected in a no less vigorous manner than is Johnson's right to be heard when his rights or privileges are implicated; and

- T.'s rights and privileges include the confidentiality and privilege regarding his health care records.

13

With those propositions in mind, the only reasonable conclusion that can be drawn is that the 2020 constitutional amendment grants T. standing to oppose Johnson's *Shiffra-Green* motion for an *in camera* review of T.'s health care records.

¶27    Case law can be superseded by statute or constitutional amendment. *See, e.g.*, *State v. Endicott*, 2001 WI 105, ¶13, 245 Wis. 2d 607, 629 N.W.2d 686 and *State v. Hayes*, 2015 WI App 71, ¶8 n.3, 365 Wis. 2d 174, 870 N.W.2d 478 (both opinions recognize that a governing principle in a prior case was superseded by subsequently enacted legislation); *see also* *Kayden*, 34 Wis. 2d at 731.  In view of our conclusion that the 2020 constitutional amendment grants T. standing to oppose, and make arguments objecting to, Johnson's pending *Shiffra-Green* motion for an *in camera* review of T.'s confidential and privileged health care records, it then follows that the amendment abrogates *Jessica J.L.*

¶28    Johnson's arguments that the 2020 constitutional amendment does not apply retrospectively to the issue of T.'s standing to oppose his *Shiffra-Green* motion are intertwined with Johnson's arguments that the amendment does not abrogate *Jessica J.L.*  We discuss each of these arguments in the next section of this opinion.

### B.  The 2020 Amendment Applies Retrospectively to the Issue of T.'s Standing to Oppose Johnson's *Shiffra-Green* Motion.

¶29    Whether a constitutional amendment operates retrospectively on a particular issue turns on whether there is "express indication" of an intent to make it retrospective on that issue.  *See* *Dairyland*, 295 Wis. 2d 1, ¶22; *Kayden*, 84 Wis. 2d at 732 ("No intention to make the amendment retrospective in operation is clearly apparent from its terms.").  As a result, we now consider whether there is express indication from the legislative history, the ratification campaign concerning the

amendment, the self-executing nature of the amendment, or the terms of the 2020 constitutional amendment, that it applies retrospectively to the issue of T.'s standing to oppose Johnson's *Shiffra-Green* motion.

## 1. Legislative History.

¶30     In determining whether the 2020 constitutional amendment applies retrospectively to the issue here, we may consider pertinent legislative history of the amendment.  *See Dairyland*, 295 Wis. 2d 1, ¶¶24-36.  The parties have not offered any pertinent legislative history, and our own research reveals nothing in the legislative history, that could shed light on this issue.

## 2. Ratification Campaign.

¶31     The ratification campaign surrounding the 2020 constitutional amendment may also be considered in determining if the amendment applies retrospectively.  *See id.*, ¶37.  Courts are to presume that, when there is pertinent public information provided to them, "the citizens of Wisconsin are familiar with the elements of the constitution and with the laws, and that the information used to educate the voters during the ratification campaign provides evidence of the voters' intent." *Id.*

¶32     Attorney General Kaul's public, explanatory statement regarding the 2020 constitutional amendment does not indicate whether any provision of the amendment is intended to be applied prospectively or retrospectively.  Attorney General Josh Kaul, *Explanatory statement for proposed constitutional amendment* (February 27, 2020), https://elections.wi.gov/siges/elections.wi.gov/files/2020-03/Esigned_Marsy%27s%20Law%20explanatory%20statement_02%2027%2020 20.pdf (last visited Oct. 23, 2020).

15

¶33     The ballot question presented to Wisconsin voters concerning the amendment read as follows:

> **Additional rights of crime victims.**     Shall section 9m of article I of the constitution, which gives certain rights to crime victims, be amended to give crime victims additional rights, to require that the rights of crime victims be protected with equal force to the protections afforded the accused while leaving the federal constitutional rights of the accused intact, and to allow crime victims to enforce their rights in court?

The ballot question does not indicate an intention that the amendment as a whole, or any part of it, apply prospectively or retrospectively.

### 3.  Amendment is Self-Executing.

¶34     In determining whether the amendment applies retrospectively to the issue here, we may also consider whether the 2020 constitutional amendment is "self-executing," meaning that the amendment is given effect without the necessity of additional legislative action.  *See Kayden*, 34 Wis. 2d at 731-32 (discussing the self-executing nature of a constitutional amendment in determining if there is intention that the constitutional amendment is "retrospective in operation"); *see also Schilling*, 278 Wis. 2d 216, ¶15 ("We have also explained that '[a] constitutional provision is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the legislature to put it in operation.'" (quoting *Kayden*, 34 Wis. 2d at 731)).  Subsection (3) of the amendment states that, with one exception not pertinent here, "all provisions of this section are self-executing."  *See* WIS. CONST. art. I, § 9m(3).  Accordingly, the amendment has been put into operation without need for further action by the legislature.  While not dispositive, the self-executing nature of the amendment as a whole is an indication that it was

16

intended to apply to motions in pending criminal cases, such as Johnson's ***Shiffra-Green*** motion.[15]

### 4. Language of the Amendment.

¶35    We now consider pertinent language of the 2020 constitutional amendment, beyond the "self-executing" concept just addressed, regarding retrospective application of the amendment to the issue here.

¶36    Subsection (2) delineates numerous crime victims' rights. *See* WIS. CONST. art. I, § 9m(2). Subsection (2) states that those rights "shall vest at the time of victimization and be protected by law in a manner no less vigorous than the protections afforded to the accused." *See **id.*** The State argues that this language, that victim rights "shall vest at time of victimization," establishes the intent that the amendment apply retrospectively to the issue of T.'s standing to oppose Johnson's pending motion because the vesting of T.'s rights necessarily occurred before the commencement of any criminal case. We disagree. The fact that the rights of a victim in a matter to which the amendment applies vest before any corresponding criminal case is initiated does not address the issue here, which is whether the amendment should apply retrospectively to a motion that was pending in a charged case that was initiated before the amendment went into effect. These are two different topics. The language relied on by the State is ambiguous on the intent regarding retrospective application of the amendment in these circumstances.

---

[15] Johnson asserts that the self-executing nature of the 2020 constitutional amendment means that it applies only prospectively and not to his pending case. However, Johnson fails to explain this assertion. We decline to attempt to develop an argument for Johnson. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating "we will not abandon our neutrality to develop arguments").

¶37 Next, subsection (2)(i) of the 2020 constitutional amendment states that "[u]pon request, [the victim is] to be heard in any proceeding during which a right of the victim is implicated, including release, plea, sentencing, disposition, parole, revocation, expungement, or pardon." *See* WIS. CONST. art. I, § 9m(2)(i). This "must be heard" provision has to be understood in light of paragraph (a) of subsection (4) of the amendment, which establishes the tools for victims to assert their rights. *See id.* art. I, § 9m(4). We now repeat subsection (4)(a) for context:

> [T]he victim, the victim's attorney or other lawful representative, or the attorney for the government upon request of the victim may assert and seek in any circuit court or before any other authority of competent jurisdiction, enforcement of the rights in this section and any other right, privilege, or protection afforded to the victim by law. The court or other authority with jurisdiction over the case shall act promptly on such a request and afford a remedy for the violation of any right of the victim.

*Id.* art. I, § 9m(4)(a).

¶38 We agree with the State that those provisions, read together, express the intent that the 2020 constitutional amendment applies to pending motions in cases initiated prior to passage of the amendment. The 2020 constitutional amendment's delineation of rights of a victim to be heard in proceedings that may not occur for years after a case is initiated, such as sentencing, revocation, parole, and expungement hearings, together with a requirement that a circuit court must act "promptly" on a victim's assertions of rights afforded to the victim under the amendment, are antithetical to the proposition that this amendment does not apply retrospectively to pending motions. Otherwise, for Johnson's argument to succeed, we would effectively be required to read the following language into the 2020 constitutional amendment: "This amendment applies only to cases in which the crime was committed after May 4, 2020." If that was the intent of the amendment,

18

we would expect to see language such as that which accompanied the implementation of the TIS-I and TIS-II sentencing schemes now embodied in WIS. STAT. § 973.01(1) ("[W]henever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, or a misdemeanor committed on or after February 1, 2003, the court shall impose a bifurcated sentence under this section.") or the effective date of changes to WIS. STAT. § 907.02(1) concerning what is commonly known as the application of **Daubert** principles to expert witness testimony.[16] *See* 2011 Wis. Act 2, § 45(5) ("[The statutory amendments] first apply to actions or special proceedings that are commenced on the effective date of this subsection.") Such language draws a line between events before and after a date certain in which different rights or procedures apply. The fact that similar language is not present in the 2020 constitutional amendment, together with the language that is present in the amendment, weighs in favor of concluding that the amendment applies retrospectively to the issue of T.'s standing to oppose Johnson's **Shiffra-Green** motion.

¶39 In addition, and although not argued by any party to this appeal, the use of the term "parole" in subsection (2)(i) confirms the point. *See* WIS. CONST. art. I, § 9m(2)(i). Because of the implementation of TIS-I and TIS-II, the term "parole" is no longer used for supervision of a convicted criminal after his or her release from prison. Instead, the term used is "extended supervision." *See* WIS. STAT. §§ 973.01 and 973.014. For that reason, only criminal cases pending as of the effective date of the amendment, some of which may be concluded in terms of

---

[16] *See* **Seifert v. Balink**, 2017 WI 2, ¶¶6-7, 372 Wis. 2d 525, 888 N.W.2d 816 (citing **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579 (1993)).

post-conviction and appeal rights, have "parole" available to the convicted felon.[17] As a result, the use of the term "parole" in the 2020 constitutional amendment leads to the conclusion that there is clear intent that the amendment applies to motions pending in cases initiated prior to the effective date of the amendment.

¶40 Accordingly, we conclude that the provisions of the 2020 constitutional amendment apply retrospectively to grant T. standing to oppose Johnson's pending *Shiffra-Green* motion.

¶41 Johnson makes arguments to the contrary, which we reject for reasons that we now explain. First, Johnson argues that, because the effective date of the 2020 constitutional amendment was May 4, 2020, the amendment does not apply to the issues before this court. However, the date the amendment became "effective" is related only to a confirmation that the amendment was enacted according to Wisconsin law. *See* ¶18, above. Johnson does not explain how or why the "effective date" of the amendment controls whether there should be retrospective or prospective application of the amendment in these circumstances.

¶42 Second, Johnson asserts that: "A criminal case that was commenced prior to the effective date of the recent amendments and of which the pertinent issue [T.'s standing] was litigated to the circuit court prior to the amendments is a settled issue based on the effective law at the time of litigation." However, in making this wholly conclusory assertion, Johnson does not engage with any analysis of authorities or the language of the 2020 constitutional amendment. For that reason,

---

[17] An alleged crime could have been committed before the year 2000, and the alleged perpetrator has not yet been charged, but those would be extremely rare events after twenty years and do not indicate an intent to make the 2020 constitutional amendment apply prospectively only.

we reject this as an argument. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that courts may reject undeveloped arguments).

¶43 Third, Johnson contends that: "The recent amendments do not constrain the court's capability to conduct such a [*Shiffra-Green*] review and the court must still follow current law regarding the production, review, and disclosure of such records." Johnson also notes that he has the right to present a complete defense in the criminal case, which includes the right to discovery of exculpatory evidence. *See Shiffra*, 175 Wis. 2d at 605. From those uncontested premises, Johnson contends as follows:

> A defendant's constitutional right to due process and a meaningful opportunity to prepare a complete defense would be infringed by a victim asserting his or her position regarding a defense discovery request in addition to arguments made by the State…. Such action by a victim would needlessly jeopardize the rights of the defendant and would limit the right to a complete and meaningful defense.

Johnson's argument fails because no one, including T. and the State, is arguing that the standard process to resolve a *Shiffra-Green* motion will not apply to Johnson's pending motion. The sole difference procedurally is that T. would have the right to be heard on that motion in addition to input from the State and Johnson. Johnson's right to present a complete and meaningful defense through the *Shiffra-Green* procedure set forth by our courts will not be impaired because of that input from T.

¶44 Finally, Johnson argues that, if the 2020 constitutional amendment allows T. to address the circuit court regarding the *Shiffra-Green* motion, the amendment would permit T. to become a participant "in the prosecution of" Johnson. He concedes that "[v]ictims have the ability to assert rights provided under law," but those rights cannot be asserted "in a manner that would afford him or her party status to join litigation associated with the prosecution of the defendant."

From that, Johnson asserts: "***Shiffra-Green*** hearings are part of the prosecution and thus outside the constitutional or statutory rights of nonparty alleged victims."

¶45 We agree that only a district attorney or a properly appointed special prosecutor can prosecute a criminal case. WIS. STAT. §§ 978.045 and 978.05(1). Consistent with this rule, T. disclaims in briefing in this court any intent to be involved in the prosecution of this matter. Moreover, the 2020 constitutional amendment does not purport to grant victims the ability to prosecute defendants. As Johnson concedes, "the recent amendments only provide a constitutionally based capability for a victim to seek to assert the enforcement of his or her rights specifically provided under law."

¶46 Granting T. standing to oppose, and make arguments to the circuit court in the criminal case supporting his opposition to, a ***Shiffra-Green*** motion concerning his privileged and confidential health care records[18] does not impair Johnson's rights because T.'s input to the circuit court on the merits of Johnson's motion does not implicate hallmarks of substantive criminal law: (1) T.'s input does not prove that Johnson is guilty; (2) T.'s input does not create a new crime or change the elements of the crimes of which Johnson has been charged; or (3) T.'s input does not increase the sentencing range for those crimes. ***State v. Lagundoye***, 2004 WI 4, ¶¶21-22, 268 Wis. 2d 77, 674 N.W.2d 526 (stating that a "substantive" change in criminal law is one that "declares what acts are crimes and prescribes the punishment therefor"; it is one that "change[s] the nature of the crime by altering what acts were proscribed under the statute."). Granting T. standing in these circumstances allows T. only to contest Johnson's ***Shiffra-Green*** motion by

---

[18] As noted, it is undisputed that T. has rights to confidentiality and privilege regarding his health care records. *See* WIS. STAT. §§ 146.82(1) and 905.04(2).

22

communicating his arguments to the court directly about why the motion should be denied or limited in a manner in the discretion of the circuit court.

¶47    In sum, the terms of the 2020 constitutional amendment apply retrospectively to grant T. standing to oppose Johnson's pending ***Shiffra-Green*** motion.[19]

## CONCLUSION

¶48    For the foregoing reasons, the order of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

---

[19] Paragraph (4)(b) of the 2020 constitutional amendment establishes that a victim may obtain appellate review of all adverse decisions under paragraph (4)(a) by filing a petition for supervisory writ. *See* WIS. CONST. art. 1, § 9m(4)(b). At the time the petition for leave to appeal was granted by this court, the 2020 constitutional amendment was not yet in effect, and T. used the then-proper procedure to request appellate review of this issue. Johnson has not objected to the method of appellate court review used by T. In this unique situation, with the 2020 constitutional amendment becoming effective after we granted T.'s petition for leave to appeal, we need not take up the question of the necessity of a supervisory writ in these circumstances.